```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA
                    Alexandria Division

ELIZABETH PASQUINE,              )
                                 )
     Petitioner,                 )
                                 )
                                 )
v.                               ) Civil Action No. 1:22-cv-469
                                 )
                                 )
DIRECTOR OF THE UNITED STATES    )
PATENT AND TRADEMARK OFFICE,     )
                                 )
     Respondent.                 )
```

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff's Amended Petition for Review of an agency order sanctioning her for violation of certain United States Patent and Trademark Office ("USPTO") Rules of Professional Conduct.

Plaintiff Elizabeth Pasquine ("Pasquine") began working for LegalForce as a Senior Trademark Attorney on July 10, 2017. She has since left LegalForce on March 29, 2019. LegalForce is a law firm that primarily provides trademark legal services, including filing trademark applications, trademark prosecution, and representing clients in Trademark Trial and Appeal Board proceedings.

Pasquine was the attorney of record in trademark applications filed by clients of LegalForce. Part of her job as attorney of record was she caused to be prepared, signed, and filed trademark

1

documents on behalf of LegalForce's clients. Pasquine was familiar with the signature rules, A7789. She also knew that an improper signature could render a client's trademark registration vulnerable to cancellation.

The USPTO uses the Trademark Electronic Application System ("TEAS"), an electronic trademark filing and prosecution system. Trademark documents are electronically prepared, signed, and filed with the USPTO through TEAS. All forms filed on TEAS have to be "personally signed" by the named signatory and there are three signature methods that may be used for this. The first permissible signature method is the "DIRECT Sign" method where applicants personally enter their electronic signatures by entering a combination of letters, numbers, spaces, or punctuation marks that they use as a signature. Second is the "ESIGN-ON" method where a link containing trademark documents that require signatures is sent to the applicants, applicants sign those documents, and then they are uploaded onto TEAS. This is a common method for law firms to use when getting clients' signatures on trademark filings the firms have prepared, which then upload them onto TEAS. Third is "the old-fashioned[,] pen-and-ink signature" where applicants print the filings, sign them, scan them onto the computer, and upload them onto TEAS.

LegalForce's signature practice for trademark filings with the USPTO was done by the firm's non-practitioner assistants

located in Nagpur, India. Pasquine did not inquire into whether signatures on trademark documents she filed were permissibly signed by the clients, she just assumed the ESIGN-ON method was used. On June 8, 2018, a LegalForce assistant stated in an email that a trademark declaration had not been signed by the client personally and so the assistant, following LegalForce's practice as he understood it, signed on behalf of the client. The assistant believed that the client had approved the form and thus he could fill in the client's name on their behalf. Pasquine became aware of this incident the following month.

On October 17, 2018, December 11, 2018, and March 22, 2019, the USPTO Office of Enrollment and Discipline ("OED") sent requests for information ("RFI") to Pasquine about the allegedly impermissible signature practice. The RFI included a list of trademark documents that were filed with her as the attorney of record and requested information about who entered the signatory's name in the signature block on those filings. Pasquine responded that she properly used the ESIGN-ON procedure to obtain clients' signatures on those particular documents in question. However, Pasquine did not provide OED with proof that the ESIGN-ON method was used and she had no personal knowledge about the firm's procedures for client signatures on trademark documents.

The USPTO has a system called the Trademark Image Capture and Retrieval System ("TICRS"). The TICRS contains Internet Protocol

3

("IP") addresses and eXtensible Markup Language ("XML") data regarding trademark submissions. When a trademark document that uses the DIRECT sign method is filed, the IP address identifies where the submission to TEAS was made, and the XML data reveals how the document was signed. The USPTO's metadata evidence shows Pasquine was an attorney of record for trademark filings where the DIRECT method was used to enter client signatures, yet the clients' locations differed from the locations where the filings were signed and uploaded. When the DIRECT method is properly used, the clients' location would match the locations from where the filings were signed and uploaded onto TEAS.

Pasquine learned no later than January 29, 2019 that this impermissible signature method may have affected thousands of trademark documents LegalForce handled. Pasquine confirmed that the non-practitioner assistants were improperly entering client signatures because of the absence of ESIGN-ON method emails in LegalForce's internal email system. An ESIGN-ON method email are emails that would have been sent from LegalForce to clients for obtaining signatures through the ESIGN-ON method. On February 1, 2019, LegalForce's Managing Attorney sent a firm-wide email acknowledging that its impermissible signature practice may have been widespread.

As an attorney at LegalForce and the attorney of record in many of these trademark applications, Pasquine could have reviewed

4

and approved assistants' work to ensure they properly obtained client signatures on trademark documents before they were submitted on TEAS. However, Pasquine failed to review the work of assistants and to catch the use of impermissible signatures. Further, once Pasquine learned of the impermissible signature practice being used, she did not contact her clients to alert them of the issue and advise them of its potential impact. The owner of LegalForce, Raj Abhyanker, sent emails to some of Pasquine's clients to confirm that the client approved and signed all trademark documents filed on TEAS. Abhyanker's email also warned that the USPTO might send a letter to ask about their signatures on documents and that they should speak to independent counsel before responding to the agency since their responses may affect their trademark rights.

On July 2, 2019, the OED Director filed a Complaint and Notice of Proceeding against Pasquine that alleged multiple violations of the USPTO Rules of Professional Conduct. On February 11, 2020, an Administrative Law Judge ("ALJ") conducted a hearing and on August 13, 2021, the ALJ issued an Initial Decision. The Initial Decision concluded that Pasquine did not exercise reasonable diligence under 37 C.F.R. SEC 11.103 when she failed to determine how LegalForce non-practitioner assistants were obtaining client signatures and filing documents with the USPTO, and when she failed to ensure her clients' matters were handled properly. The ALJ also

concluded that she violated 37 C.F.R. §§ 11.104(a)(3),(b) because she never directly inquired with her clients or the non-practitioner assistants about who signed the trademark documents for which she was an attorney of record, despite learning that thousands of LegalForce's filings with the USPTO could have been affected by the impermissible signature practice. Further, she violated this rule by not informing her clients about the problem and that it could have affected their applications and registered trademarks. In accordance with 37 C.F.R. § 11.54(b), the ALJ found that Pasquine violated duties owed to her clients by not ensuring their matters were handled with reasonable diligence and that she failed to communicate to her clients the likelihood that their trademark applications had been affected. The ALJ also found that Pasquine's negligent conduct had the potential to cause actual injury to the clients, because their registrations could have been subject to cancellation. The ALJ found that three aggravating factors were present. First, that Pasquine engaged in a pattern of misconduct. Second, she committed multiple offenses under the USPTO Rules of Professional Conduct. Third, she had substantial experience in the practice of trademark law. Given these findings, the ALJ determined the appropriate sanction for Pasquine was a public reprimand and 12 months of probation.

Following the ALJ's decision, the USPTO Director agreed that Pasquine failed to diligently represent her clients and failed to

reasonably inform her clients about the impermissible signature practice once she learned about how it affected their trademark applications and registrations. Thus, the USPTO Director affirmed the ALJ's decision and did not change the sanction of a public reprimand and 12 months of probation.

Judicial review of a USPTO Director's final decision is provided for in 35 U.S.C. § 32. That review is governed "according to the provisions of the Administrative Procedure Act." Bender v. Dudas, 490 F.3d 1361, 1365 (Fed. Cir. 2007). Only the final agency action can be scrutinized. See, e.g., Faro v. USPTO, 2016 WL 10788425, at *4 (E.D. Va. July 29, 2016) (citing FTC v. Standard Oil Co., 449 U.S. 232, 246 (1980)), aff'd, 697 F. App'x 1025 (Fed. Cir. 2017). This Court reviews "the decision of the [USPTO Director], not that of the ALJ." Starrett v. Special Couns., 792 F.2d 1246, 1252 (4th Cir. 1986) (citation omitted). In cases of USPTO discipline, "[w]hen reviewing agency decisions, the standard is 'highly deferential, with a presumption in favor of finding the agency action valid'" Haley v. Under Sec'y of Com. for Intell. Prop., 129 F. Supp. 3d 377, 381 (E.D. Va. 2015)(quoting Ohio Valley Env't Coal. v. Aracoma Coal Co., 556 F.3d 177, 192 (4th Cir. 2009)).

A court's role under this standard is only "to determine whether the record reveals that a rational basis exists for [the] decision." Manufactured Hous. Inst. v. EPA, 467 F.3d 391, 398 (4th

7

Cir. 2006) (quoting Natural Res. Def. Council v. EPA, 16 F.3d 1395, 1401 (4th Cir. 1993)). The court may reverse the USPTO's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Bender, 490 F.3d at 1365-66.

The first conclusion of the USPTO Director was that Pasquine failed to act diligently and promptly in representing her clients before the USPTO in violation of 37 C.F.R. § 11.103. There is a rational basis for this conclusion and thus it was not a clear error in judgement.

The rational basis for this conclusion includes that Pasquine never verified whether certain trademark documents she filed on TEAS bearing client signatures were actually permissibly signed by them. She only assumed the ESIGN-ON method was used by the non-practitioner assistants to obtain the signatures without having any verification or personal knowledge. From January 2018 to June 2018, Pasquine was the attorney of record on many trademark documents that the DIRECT method was used to enter client signatures. However, the clients did not sign those documents directly, non-practitioner assistants did. As admitted by a LegalForce non-practitioner assistant on June 8, 2018, LegalForce's "regular practice" at that time was to "sign[] [documents] on behalf of the client[s]."

Pasquine argues her involvement with the trademark documents was limited to being the attorney of record and she did not personally handle the filing or review of those documents. Further, she argues she should not bear the consequences of what other attorneys of record may have done in approving documents with impermissible signatures. However, the USPTO Director found that Pasquine caused to be prepared, signed, and filed trademark documents on behalf of LegalForce clients in trademark applications for which she was the attorney of record and applications for which another LegalForce attorney was the attorney of record. Pasquine was also able to communicate with the non-practitioner assistants about the filing of trademark documents but never inquired about whether the signatures were permissibly obtained.

Pasquine attempts to argue the USPTO Director applied a strict liability standard when coming to a decision here. However, as appearing from the record, the USPTO Director considered all of the circumstances surrounding Pasquine and LegalForce before concluding she acted unreasonably and violated 37 C.F.R. §§ 11.103, 11.104(a)(3),(b). The USPTO Director found that Pasquine "relied on a variety of assumptions with regard to LegalForce's signature policies and, had she exercised reasonable diligence, she should have ensured that assistants were appropriately obtaining signatures on trademark documents."

9

The second conclusion the USPTO Director came to is that Pasquine failed to keep her clients reasonably informed about the impermissible signature practice at LegalForce and the potential consequences thereof in violation of 37 C.F.R. § 11.104(a)(3), (b). There was a rational basis for the USPTO Director's conclusion that Ms. Pasquine violated 37 C.F.R. §§ 11.104(a)(3),(b) and this was not a clear error in judgment.

Pasquine should have contacted her clients about the impermissible signature practice and the possible consequences to their trademark documents when the OED sent her a RFI on October 17, 2018. The RFIs detailed the potentially improper client signatures on certain trademark documents that Pasquine was the attorney of record. She had two additional opportunities to notify her clients when RFIs were sent on December 11, 2018 and March 22, 2019.

Pasquine raises efforts LegalForce undertook to contact clients affected by the signature practice that she believes the USPTO Director overlooked. However, there was a reasonable basis to conclude they insufficiently communicated the impermissible signature practice and failed to advise clients of the possible consequences and remedial steps that should be taken. Nothing brought forward by Pasquine excuses her failure to contact her clients about the practice nor does it demonstrate the USPTO Director's conclusion was a clear error of judgment.

10

Lastly, the USPTO Director decided a disciplinary sanction of public reprimand and 12 months of probation under 37 C.F.R. § 11.54(b) was appropriate because Pasquine's conduct caused significant potential injury to her clients.

Pasquine attempts to argue that her conduct was not likely to cause potential injury to her clients because there is a myriad of solutions when trademark applications are rejected, or registered trademarks are canceled due to an impermissible signature on a document. The Court agrees with the USPTO Director discounting these solutions because Pasquine never undertook remedial action to limit the potential injury to her clients.

Pasquine insists her discipline is not commensurate in scope with her unethical conduct and that she should not have received the same sanction as the two other LegalForce attorneys disciplined for the impermissible signature practice. However, Pasquine clearly violated established regulations governing attorney practice and conduct before the USPTO. The USPTO Director's sanctions of a public reprimand and 12 months of probation have a rational basis and are not clear errors of judgment in light of Ms. Pasquine's violations of 37 C.F.R. § 11.103 and 37 C.F.R. §§ 104(a)(3),(b).

For the foregoing reasons, Plaintiff's Amended Petition for Review should be denied and the USPTO Director's decision should be affirmed.

An appropriate Order shall issue.

*Claude M. Hilton*
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
May 25, 2023

12